**Case No. 16-15962**
**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

FEDERAL HOME LOAN
MORTGAGE CORPORATION;
FEDERAL HOUSING FINANCE
AGENCY, As Conservator of Freddie
Mac; FEDERAL NATIONAL
MORTGAGE ASSOCIATION,
            Plaintiffs - Appellees,
v.
SFR INVESTMENTS POOL 1, LLC,
            Defendant - Appellant,
and
NEVADA NEW BUILDS, LLC;
LAS VEGAS DEVELOPMENT
GROUP, LLC,
            Defendants.

**APPEAL**
from the United States District Court for the District of Nevada
The Honorable GLORIA M. NAVARRO | Case No. 2:15–cv–01338–GMN–CWH

---

**REPLY BRIEF FOR APPELLANT-DEFENDANT SFR INVESTMENTS POOL 1, LLC**

---

HOWARD C. KIM, ESQ. (SBN 10386)
JACQUELINE A. GILBERT, ESQ. (SBN 10593)
DIANA CLINE EBRON, ESQ. (SBN 10580)
JESSE N. PANOFF, ESQ. (SBN 10951)

KIM GILBERT EBRON
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
Telephone: (702) 485-3300
Facsimile: (702) 485-3301
*Attorneys for Defendant-Appellant*
*SFR Investments Pool 1, LLC*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES .......................................................... iii

INTRODUCTION ........................................................................ 1

ARGUMENT ............................................................................. 1

I.  4617(b)(19)(B)'s TEXT & STRUCTURE DEFEAT PLAINTIFFS'
    ARGUMENTS ..................................................................... 1

    A.  4617(b)(19)(B)'s Headings Convey Congress's Intent
        because they Accurately Describe their Content ................... 2

    B.  Plaintiffs Reject 4617(b)(19)(B)(i)'s Description of
        Mortgages Held in Trust & Violate 4617(b)(19)(B)(i)'s
        Rule of Construction ................................................. 3

    C.  Plaintiffs Rewrite 4617(b)(19)(B)(ii) by Making
        "General" Transform Into "Limited," "Held" Becomes
        "Manage," & "In" now Means "Out" ................................... 5

    D.  Plaintiffs Constrict 4617(b)(19)(B)(iii)'s Broad Text ............ 8

    E.  4617(b)(19)(B)'s Text Withstands Plaintiffs' Public
        Policy Arguments ..................................................... 10

    F.  Legislative History is Improper because 4617(b)(19)(B)
        is Unambiguous ....................................................... 10

    G.  The Promissory Note Context does not Displace
        4617(b)(19)(B)'s Text ............................................... 11

    H.  4617(b)(19)(B)'s Text Trumps Irrelevant Common Law
        Trust Principles ..................................................... 13

II. PLAINTIFFS' DUE PROCESS POSITIONS FAIL BECAUSE THEY
    CONTRAVENE SUPREME COURT PRECEDENT & DISTORT SFR'S
    ARGUMENTS ..................................................................... 16

i

A.     4617(j)(3)'s Text is not "Automatic" & FHFA Makes Decisions Concerning Consent ............................................16

B.     Supreme Court Precedent Defeats Plaintiffs' Contention that SFR did not Acquire Property Interests ........................................18

C.     Plaintiffs Distort *Ralls* ..........................................................21

D.     Plaintiffs Mischaracterize SFR's Due Process Cases ........................22

E.     The Legislative Acts Doctrine is Inapplicable ....................................23

F.     Plaintiffs' Concessions Support SFR's Due Process Arguments ..........................................................................23

III.   PLAINTIFFS DISREGARD TRADITIONAL PREEMPTION PRINCIPLES ..................24

A.     4617(j)(3)'s Text Defeats Plaintiffs' Express Preemption Arguments ..........................................................................24

B.     4617(j)(3)'s Purpose Refutes Plaintiffs' Implied Preemption Positions ..................................................................25

IV.   FHFA VIOLATED "REASONED DECISIONMAKING" ...........................................27

V.    THE DISTRICT COURT'S ORDER CONTRAVENED FRCP 65(d) .........................28

VI.   PLAINTIFFS ADMIT BOURNE VALLEY IS NOT CONTROLLING...........................28

CONCLUSION ........................................................................29

CERTIFICATE OF COMPLIANCE ...................................................30

CERTIFICATE OF SERVICE .........................................................31

## TABLE OF AUTHORITIES

<u>CASES</u>

*62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*,
340 U.S. 593 (1951)..................................................................................1

*Air Pegasus of D.C., Inc. v. United States*,
424 F.3d 1206 (Fed. Cir. 2005) ...................................................21

*Baker Botts L.L.P. v. Asarco, LLC*,
576 U.S. ___, 135 S. Ct. 2158 (2015) .........................................10

*Bourne Valley Ct. Trust v. Wells Fargo Bank, N.A.*,
832 F.3d 1154 (9th Cir. 2016) .......................................... 28, 29

*Brock v. Roadway Express, Inc.*,
481 U.S. 252 (1987)...................................................................23

*Caraco Pharm. Lab., Ltd. v. Novo Nordisk A/S*,
566 U.S. 399 (2012)...................................................................11

*Chapman v. Bank of Am.*,
543 F. App'x 554 (6th Cir. 2013)................................................12

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001)...................................................................11

*City of Spokane v. Fed. Nat'l Mortg. Ass'n*,
775 F.3d 1113 (9th Cir. 2014) ...................................................24

*Clark v. Astrue*,
529 F.3d 1211 (9th Cir. 2008) ...................................................17

*Cnty. of Sonoma v. FHFA*,
710 F.3d 987 (9th Cir. 2013) .....................................................28

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
837 F. Supp. 2d 162 (S.D. N.Y. 2011) ........................................15

*Estrella v. Brandt*,
682 F.2d 814 (9th Cir. 1982) .....................................................10

*FAA v. Cooper*,
    566 U.S. 284 (2012)...................................................................24

*FDIC v. Massingill*,
    24 F.3d 768 (5th Cir. 1994) ...........................................................12

*FDIC v. McFarland*,
    243 F.3d 876 (5th Cir. 2001) .........................................................25

*France v. Thermo Funding Co., LLC*,
    989 F. Supp. 2d 287 (S.D. N.Y. 2013). .................................. 14, 15

*Gribben v. UPS, Inc.*,
    528 F.3d 1166 (9th Cir. 2008) ...................................................2, 29

*Hardison v. Cohen*,
    375 F.3d 1262 (11th Cir. 2004) .....................................................20

*Hilao v. Estate of Marcos*,
    103 F.3d 767 (9th Cir. 1996) ...........................................................2

*In re Cardelucci*,
    285 F.3d 1231 (9th Cir. 2002) .......................................................17

*In re Gurney's Inn Corp. Liquidated Trust*,
    215 B.R. 659 (Bankr. E.D. N.Y. 1997). .......................................14

*Knecht v. Fid. Nat'l Title Ins. Co.*,
    No. C12–1575RAJ, 2015 WL 3618358 (W.D. Wash. June 9,
    2015). .............................................................................................12

*Michigan v. EPA*,
    576 U.S. ___, 135 S. Ct. 2699 (2015) ..................................... 27, 28

*Paloian v. LaSalle Bank, N.A.*,
    619 F.3d 688 (7th Cir. 2010) .........................................................14

*Paul v. Davis*,
    424 U.S. 693 (1976)........................................................................19

*Pillsbury Co. v. FTC*,
    354 F.2d 952 (5th Cir. 1966) .........................................................23

*Ralls Corp. v. CFIUS*,
    758 F.3d 296 (D.C. Cir. 2014)........................................................ 20, 21, 22

*Ratzlaf v. United States*,
    510 U.S. 135 (1994).......................................................................10

*Rodriguez v. United States*,
    480 U.S. 522 (1987)................................................................. 26, 27

*Schmidt v. Lessard*,
    414 U.S. 473 (1974).......................................................................28

*Schooner Harbor Ventures, Inc. v. United States*,
    569 F.3d 1359 (Fed. Cir. 2009) ....................................................20

*Skylights LLC v. Byron*,
    112 F. Supp. 3d 1145 (D. Nev. 2015) ................................... 18, 26

*Smith v. United States*,
    508 U.S. 223 (1993).......................................................................12

*Stenberg v. Carhart*,
    530 U.S. 914 (2000).........................................................................3

*Texaco, Inc. v. Short*,
    454 U.S. 516 (1982).......................................................................17

*Tulsa Prof'l Collection Services, Inc. v. Pope*,
    485 U.S. 478 (1988).......................................................................17

*United States v. Castillo-Marin*,
    684 F.3d 914 (9th Cir. 2012) .......................................................27

*United States v. Graf*,
    610 F.3d 1148 (9th Cir. 2010). .............................................. 10, 14

*United States v. James Daniel Good Real Prop.*,
    510 U.S. 43 (1993).........................................................................23

*United States v. Kwai Fun Wong*,
    575 U.S. ____, 135 S. Ct. 1625 (2015) .......................................24

*United States v. Nader*,
    542 F.3d 713 (9th Cir. 2008) ............................................................2

*United States v. Ullah*,
    976 F.2d 509 (9th Cir. 1992) ................................................. 16, 25

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
    570 U.S. ___, 133 S. Ct. 2517 (2015) ............................................2

*Wellpoint, Inc. v. Comm'r*,
    599 F.3d 641 (7th Cir. 2010) ........................................................14

*Wicker v. Oregon*,
    543 F.3d 1168 (9th Cir. 2008) ....................................................14

## S<small>TATUTES</small>

12 U.S.C. § 1825(b)(2) ................................................. 24, 25, 26

12 U.S.C. § 4617(b)(11)(E) ...........................................................4

12 U.S.C. § 4617(b)(19)(B) ................................................. passim

12 U.S.C. § 4617(b)(2) ............................................................ 12, 27

12 U.S.C. § 4617(b)(2)(A)(i) ................................. 2, 4, 12, 13

12 U.S.C. § 4617(b)(2)(B)(i) ...........................................................4

12 U.S.C. § 4617(b)(2)(G) ...........................................................4

12 U.S.C. § 4617(j)(2) ................................................. 18, 24

12 U.S.C. § 4617(j)(3) ................................................. passim

12 U.S.C. § 4617(j)(4) ..............................................................18

15 U.S.C. § 18 ..............................................................22

21 U.S.C.A. § 881(a)(7) ..............................................................22

## O<small>THER</small> A<small>UTHORITIES</small>

*Proposals for Improving the Regulation of the Housing GSEs:*
    *Hearings Before the Comm. On Banking, Housing, & Urban*

*Affairs*,
    108th Cong. 477 (2003) ................................................................................11

Restatement (Third) of Trusts § 1 cmt. b (2003) ......................................................15

Statement of Policy on Foreclosure Consent and Redemption Rights,
    57 Fed. Reg. 29491 (July 2, 1992) ........................................................ 25, 26

## R<small>ULES</small>

Fed. R. Civ. P.  65(d) ................................................................................28

## INTRODUCTION

This appeal involves an issue of first impression: Whether, under 12 U.S.C. § 4617(b)(19)(B), FHFA can "succeed to" mortgages "held in trust" by Fannie Mae or Freddie Mac ("Enterprises"). 4617(b)(19)(B)'s text is clear: Any mortgage "held in trust" shall be *held*—not succeeded to—by FHFA. Because FHFA cannot succeed to these mortgages, they are not FHFA's property, rendering 4617(j)(3) inapplicable. Consequently, Plaintiffs avoid 4617(b)(19)(B)'s text. They warn this Court that if it follows 4617(b)(19)(B)'s text, then economic uncertainty will ensue, frustrating alleged statutory objectives. But even when a law's objective is to protect the public, the Supreme Court has cautioned that "in our anxiety to effectuate the congressional purpose of protecting the public, we must take care not to extend the scope of the statute beyond the point where Congress indicated it would stop." *62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 600 (1951). Here, 4617(b)(19)(B) is the point where FHFA's power of succession stops, irrespective of Plaintiffs' "anxiety." This Court should reverse and remand with instructions to dismiss the Corrected First Amended Complaint ("FAC").

## ARGUMENT

### I. 4617(b)(19)(B)'S TEXT & STRUCTURE DEFEAT PLAINTIFFS' ARGUMENTS

In the district court, SFR explained that declarations from Enterprise employees indicated that the mortgages in this case were "held in trust." ER_24:11-

13(¶13), 26:19-24(¶8), 29:4-6(¶9); ECF_87, 10:1-24 – 11:1-10. Plaintiffs never disputed this. ECF_101, 10:4-5. Rather, they told the district court that it "makes no legal difference" whether the mortgages were "held in trust." ECF_101, 10:5. Now, Plaintiffs change course, stating that if this Court reverses and remands, then they "are prepared to show" that some of the mortgages were *not* held in trust. Answering Brief ("AB")_16_n.3. Yet, "this argument was not presented to the district court, and therefore it has been waived." *Gribben v. UPS, Inc.*, 528 F.3d 1166, 1171 (9th Cir. 2008). This new position is also waived because it appears in a footnote. *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.4 (9th Cir. 1996); AB_16_n.3.

## A. 4617(b)(19)(B)'s Headings Convey Congress's Intent because they Accurately Describe their Content

Plaintiffs suggest that statutory headings do not convey Congress's intent. AB_25. This is wrong. Opening Brief ("OB")_10-12. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. ___, 133 S. Ct. 2517, 2529 (2015); *United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008). Nonetheless, if a heading inaccurately describes the information that follows, then its significance is limited. Consider Plaintiffs' heading, "The Succession Provision's Text Refutes SFR's Reading." AB_20. This heading inaccurately describes the arguments that follow; such arguments do not involve 4617(b)(2)(A)(i)—what Plaintiffs call the "Succession Provision." Instead, they concern 4617(b)(19)(B). Plaintiffs' inaccurate heading cannot, therefore,

provide insight about what follows. The same does not hold for 4617(b)(19)(B)'s headings, all of which accurately describe their content. OB_12.

## B. Plaintiffs Reject 4617(b)(19)(B)(i)'s Description of Mortgages Held in Trust & Violate 4617(b)(19)(B)(i)'s Rule of Construction

According to Plaintiffs, 4617(b)(19)(B)(i) ensures that mortgages held in trust are "off-limits to creditor claims." AB_21. But 4617(b)(19)(B)(i) does more than this; it describes mortgages held in trust as "any mortgage . . . held in trust . . . by a regulated entity for the benefit of any person other than the regulated entity[.]"[1] OB_15-16. When Congress uses a statutory description, "we must follow that definition, even if it varies from that term's ordinary meaning." *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000). Regrettably, Plaintiffs do not follow 4617(b)(19)(B)(i)'s description. They refuse to do so because Plaintiffs describe mortgages held in trust as "assets of the regulated entity." AB_18-19. This is impermissible; Plaintiffs "must follow," not change, Congress's description.

4617(b)(19)(B)(i) contains a prohibition, "Any mortgage held in trust . . . shall not be available to satisfy the claims of creditors [.]" Plaintiffs claim this prohibition would be superfluous if FHFA did not have the power to succeed to mortgages held in trust; supposedly, 4617(b)(19)(B)(i) limits the powers FHFA "would otherwise

---

[1] This description links "held" with "in": a mortgage was "**held in** trust." OB_16. 4617(b)(19)(B)(ii)'s command incorporates this link. OB_17.

3

have had ***as owner***[.]" AB_21. Hence, Plaintiffs' "superfluous" argument fails because it assumes that FHFA's status "as owner" triggers FHFA's powers. The text shows that it does not.

FHFA's status as conservator or receiver triggers FHFA's powers. This is proven by a phrase Congress used throughout 4617 to describe FHFA's powers: "as conservator or receiver." For instance, FHFA's power of succession states, "The Agency shall, ***as conservator or receiver*** . . . succeed to[.]" 4617(b)(2)(A)(i). FHFA's powers to "take over," "transfer," "sell," and "dispose of" all use the phrase "as conservator or receiver." 4617(b)(2)(B)(i); 4617(b)(2)(G); 4617(b)(11)(E). This phrase specifies that FHFA's status "as conservator or receiver" triggers FHFA's powers. After all, 4617(b)'s heading is "Powers and Duties of the Agency ***as Conservator or Receiver***," not "Powers of the Agency as Owner."

And so, whether FHFA has power over an item does not turn on FHFA owning that item; it hinges on whether Congress gave FHFA power over an item "as conservator or receiver." 4617's text will establish whether Congress has given FHFA a power as "conservator or receiver." At the same time, 4617's text contains "General Exceptions" to these powers. 4617(b)(19). The scope and applicability of FHFA's powers "as conservator or receiver" can only be understood by reading them together with these "General Exceptions," something Plaintiffs refuse to do. Here, 4617(b)(2)(A)(i) gives FHFA—"as conservator or receiver"—the power of

4

succession. Yet, 4617(b)(19)(B) establishes that mortgages held in trust implicate "General Exceptions" to this power. Congress did not intend for FHFA to "succeed to" mortgages "held in trust." To the contrary, in 4617(b)(19)(B)(ii), Congress commanded FHFA to hold such mortgages in trust. Unfortunately, Plaintiffs exchange *Congress's* phrase—"as conservator or receiver"—for one to their liking, "as owner." But statutory construction is not a swap meet where words are traded until they form a more appealing law.

4617(b)(19)(B)(i) ends with a rule of construction, "nothing in this clause [4617(b)(19)(B)(i)] shall be construed to expand or otherwise affect the authority of any regulated entity." Here, Plaintiffs "construed" "this provision" to mean that FHFA succeeded to "the authority of any regulated entity" over mortgages held in trust. AB_21. Yet, this construction "affect[s] the authority of any regulated entity" because it causes that "authority" to go to FHFA. As such, Plaintiffs' construction contravenes 4617(b)(19)(B)(i). It also contravenes Plaintiffs' position that 4617(b)(19)(B) "has nothing to do with" succession. AB_2.

## C. Plaintiffs Rewrite 4617(b)(19)(B)(ii) by Making "General" Transform Into "Limited," "Held" Becomes "Manage," & "In" now Means "Out"

Plaintiffs rewrite 4617(b)(19)(B)(ii). Initially, they describe 4617(b)(19)(B)(ii) as a "*limited* exception." AB_22, 25. Congress, however, described 4617(b)(19) as "*General* Exceptions." Congress intended 4617(b)(19) to

contain "*General* Exceptions" to 4617(b)(2)'s "*General* Powers," including FHFA's power of succession. Plaintiffs are desperate to prevent this from happening, so they replace "General" with its opposite—"limited."

Plaintiffs further rewrite 4617(b)(19)(B)(ii) by erasing its most important word: "Held."[2] OB_19-20. This word restricts what FHFA *shall* do with mortgages held in trust. But Plaintiffs want FHFA to do more than "hold" these mortgages *in* trust; they want FHFA to be able to "take over," "transfer," "sell," "succeed to," "realize upon," "dispose," and "remove" mortgages *out* of trust. As a result, Plaintiffs replace "held" with "manage," a term that encompasses multiple activities. AB_22. After doing so, Plaintiffs proclaim 4617(b)(19)(B)(ii) is a "narrow directive concerning the management" of mortgages. AB_22, 23, 25, 27. Nonsense. 4617(b)(19)(B)(ii) does not address "management" of mortgages; it is entitled "*Holding* of Mortgages," and commands that any mortgage "described in clause (i) shall be held by" FHFA, not "managed" by FHFA. It is a "General Exception" involving "Holding of Mortgages," not a "narrow directive concerning the management" of mortgages. By replacing "held" with "managed," Plaintiffs repudiate Congress's intent, so much so that "the short answer is that Congress did not write the statute that way." *United States v. Naftalin*, 441 U.S. 768, 773 (1979).

---

[2] "Held" dominates 4617(b)(19)(B)(ii)'s heading and text. OB_19-20.

Plaintiffs continue to mangle 4617(b)(19)(B)(ii)'s text. They use 4617(b)(19)(B)(ii)'s phrase—"in accordance with the terms of the agreement creating such trust"—as a loophole to 4617(b)(19)(B)(i)'s prohibition that mortgages held in trust "shall not be available to satisfy the claims of creditors[.]" Plaintiffs insist that FHFA can—through "the terms of the agreement"—remove a mortgage *out* of trust and make it "available to satisfy" claims. Plaintiffs actually posit that FHFA can use "the terms of the agreement" to do what "*shall not be*" done: make mortgages held in trust "available to satisfy" claims. Plaintiffs state this is permissible as long as doing so "is irrelevant to the certificate-holders," a phrase foreign to 4617. Regardless of who "certificate-holders" are, this much is clear: *Congress's* intent dictates what is "relevant." And, it is *Congress's* intent that mortgages held in trust "shall not be available to satisfy" creditor claims, irrespective of what Plaintiffs, FHFA, or "certificate-holders" deem to be "irrelevant."[3]

Moreover, Plaintiffs contend that FHFA can use "the terms of the agreement" to remove mortgages "described in clause (i)" *out* of trust. AB_27. 4617(b)(19)(B)(ii)'s textual link between "held" and "terms" defeats this contention. In 4617(b)(19)(B)(ii), Congress linked "held" with "terms," as in any mortgage held in trust "shall be **held** by the conservator . . . in accordance with the **terms** of the

---

[3] As they do with 4617(b)(19)(B)(i), Plaintiffs state that 4617(b)(19)(B)(ii) would be superfluous if FHFA lacked the power to succeed to mortgages held in trust. AB_22. SFR incorporates herein its explanation about why this argument fails.

agreement creating such trust[.]" OB_20. This link confines FHFA to a trust agreement's "terms" that concern "holding" mortgages "in trust." "Terms" that involve removing, selling, or transferring a mortgage *out* of trust are off limits.[4] If FHFA could remove a mortgage, then: (i) it would not be "*in* trust" and (ii) it would not be "*held* by" FHFA in trust. OB_20.

### D.    Plaintiffs Constrict 4617(b)(19)(B)(iii)'s Broad Text

Plaintiffs opine that 4617(b)(19)(B)(iii) "[p]rescribes the method of computing damages for breach of the trust agreements." AB_22. 4617(b)(19)(B)(iii)—which Plaintiffs never quote—says nothing of the sort; the phrase "damages for breach of the trust agreements" is not in 4617(b)(19)(B)(iii). Not even close. 4617(b)(19)(B)(iii) is more general, pertaining to FHFA's liability for "*any* . . . claim *relating to* the mortgages held in trust[.]" "Any" and "relating to" have expansive definitions. OB_21. Based on this expansive text, Congress intended that if FHFA does not "hold" any mortgage described in 4617(b)(19)(B)(i) "in trust," then FHFA is subject to liability.[5] Plaintiffs rewrite 4617(b)(19)(B)(iii)'s broad text

---

[4] Plaintiffs claim the Restatement (First) of Trusts § 190 cmt. c establishes that "under the common law, to 'hold assets in trust' implies a power to sell or exchange specific assets for the benefit of the trust." AB_27_n.6. The Restatement, however, does not use the phrase "hold assets in trust." And, as SFR discusses below, Plaintiffs' description of Enterprise trusts causes the Restatement to be inapplicable.
[5] Congress conveyed this intent by placing 4617(b)(19)(B)(iii) after the clause that commands FHFA to hold such mortgages "in trust" (i.e. 4617(b)(19)(B)(ii)), and by using expansive language. OB_21-22.

by using the narrower phrase "damages for breach of the trust agreements."

Plaintiffs rewrite 4617(b)(19)(B)(iii) to create the illusion that it "has no relevance to what [FHFA] may do with" mortgages held in trust. AB_22. But the version of 4617(b)(19)(B)(iii) that Congress wrote acknowledges that FHFA can be subjected to liability for "*any . . .* claim *relating to*" mortgages held in trust. These words are sufficiently expansive to subject FHFA to liability for disobeying Congress's command. By subjecting FHFA to liability, 4617(b)(19)(B)(iii) reinforces that FHFA "shall" hold these mortgages in trust, and not "succeed to," "take over," "sell," "transfer," or "realize upon" them. In doing so, 4617(b)(19)(B)(iii) *does* have relevance to what FHFA "shall" do with mortgages held in trust; it is part of 4617(b)(19)'s "General Exceptions" to FHFA's "General Powers."[6]

---

[6] Plaintiffs, as they do with 4617(b)(19)(B)(i)-(ii), claim 4617(b)(19)(B)(iii) implies that FHFA succeeds to mortgages held in trust. SFR incorporates herein its explanations about why no such implication exists. Plaintiffs opine that if FHFA does not succeed to mortgages held in trust, then FHFA "cannot be subject to damages relating to those mortgages." AB_26. This fails because there is no textual link between succession and liability. The extent to which FHFA is subjected to liability does not turn on whether FHFA succeeded to these mortgages. Rather, FHFA is subjected to liability for disobeying Congress's command. OB_21-22. Plaintiffs also posit that "the fact that [FHFA] may be liable in the first instance for the breach of any trust agreement only confirms that the Conservator succeeded to" mortgages held in trust. AB_22. This is meritless because 4617(b)(19)(B)(iii) does not use the phrase "breach of any trust agreement"; a non-existent phrase does not "confirm" anything.

9

## E.   **4617(b)(19)(B)'s Text Withstands Plaintiffs' Public Policy Arguments**

Plaintiffs' public policy arguments against 4617(b)(19)(B)'s plain meaning are waived because they lack supporting authority. AB_7:¶2, 20:¶1, 27:¶1. *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010). Moreover, Plaintiffs' contentions that SFR's reading of 4617(b)(19)(B) will destabilize the "housing finance system," cause market uncertainty, and harm the Enterprises are arguments of counsel, not facts. Thus, they should be rejected. AB_17, 20, 27. *Estrella v. Brandt*, 682 F.2d 814, 819-20 (9th Cir. 1982).[7] Similarly, Plaintiffs' ruminations about statutory "objectives" cannot displace 4617(b)(19)(B)'s text. AB_7, 14, 20. Courts "follow the text even if doing so will supposedly "undercut a basic objective of the statute[.]'" *Baker Botts L.L.P. v. Asarco, LLC*, 576 U.S. ___, 135 S. Ct. 2158, 2169 (2015).

## F.   **Legislative History is Improper because 4617(b)(19)(B) is Unambiguous**

Plaintiffs' use of so-called "legislative history" is impermissible because 4617(b)(19)(B) is unambiguous; if a law is unambiguous, then courts do not use legislative history. *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994). Plaintiffs' first source of "legislative history" comes from a bill that Congress never enacted, and is dated roughly four years before Congress codified 4617(b)(19)(B).

---

[7] As 4617(b)(19)(B) is unambiguous, Plaintiffs cannot use the absurd result doctrine. AB_27. *Peabody Coal Co. v. Navajo Nation*, 75 F.3d 457, 468 (9th Cir. 1996).

AB_24_n.4. This Court should not consider "legislative history" of a bill that Congress did not enact. *Caraco Pharm. Lab., Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 422 (2012). This is especially so because the historical context surrounding this "legislative history" is different from the context surrounding 4617(b)(19)(B)'s enactment.

Consider in this "legislative history," Freddie Mac's then-CEO testified, "a Nobel Laureate . . . estimated that the chance of a cataclysmic meltdown to [Freddie and Fannie] was less than 1 in 500,000. I can get you the exact citation, but it was about the same as an asteroid hitting the United States." *Proposals for Improving the Regulation of the Housing GSEs: Hearings Before the Comm. On Banking, Housing, & Urban Affairs*, 108th Cong. 477 (2003) (statement of Richard F. Syron). Such testimony "highlights the perils of relying on the fate of prior bills to divine the meaning of enacted legislation." *Caraco*, 566 U.S. at 422. Plaintiffs' other "legislative history" is unpersuasive because it does not discuss 4617(b)(19)(B). AB_24_n.5. Some of it is testimony from a non-legislator, an unreliable form of legislative history. AB_24_n.5 (citing Kieran P. Quinn, Mortg. Bankers Ass'n); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 120 (2001).

## G.    The Promissory Note Context does not Displace 4617(b)(19)(B)'s Text

Plaintiffs boast that the promissory note context proves that "succeed" and

"hold" are compatible. AB_17, 25. According to Plaintiffs, the same person can own and hold a note, a revelation allegedly showing that SFR "departs from the text of" 4617(b)(19)(B). AB_17. By veering off into the promissory note context, it is *Plaintiffs*—not SFR—who "depart" from 4617(b)(19)(B)'s text. And by assessing whether "succeed" and "hold" are compatible, it is *Plaintiffs*—not SFR—who "depart" from the principle that courts interpret provisions, not isolated phrases. *Smith v. United States*, 508 U.S. 223, 233 (1993). The issue is not whether "succeed" and "hold" are compatible, but whether Congress intended 4617(b)(19) to contain "General Exceptions" to 4617(b)(2)'s "General Powers." OB_10-14. Indeed, this appeal concerns Congress's allocation of power to an agency and the limits of that power; such issues—which are resolved by statutory construction—are foreign to the promissory note context.[8]

---

[8] Plaintiffs' cases about promissory notes are inapposite. AB_16-17, 25-26. *Knecht* construed statutes from Washington State; though it concluded that one entity was the holder and owner of a note, it explained this "is ultimately immaterial[.]" *Knecht v. Fid. Nat'l Title Ins. Co.*, No. C12–1575RAJ, 2015 WL 3618358, at *7 (W.D. Wash. June 9, 2015). Insights about Washington law, especially those that are "ultimately immaterial," have no bearing on the meaning of 4617(b)(19)(B) or 4617(b)(2)(A)(i). In *Massingill* it was undisputed FDIC owned and held two notes. *FDIC v. Massingill*, 24 F.3d 768, 773 n.9 (5th Cir. 1994). This undisputed point does not elucidate the relationship between 4617(b)(19)(B) and 4617(b)(2)(A)(i)—a relationship that the parties in this appeal dispute. *Chapman*—an unpublished Sixth Circuit case—remarked, "[d]uring discovery, Bank of America informed Chapman that BNY Mellon is the owner and holder of" a note. *Chapman v. Bank of Am.*, 543 F. App'x 554, 555 (6th Cir. 2013). A tidbit from discovery—conducted in another case, in another Circuit, and discussed in an unpublished opinion—is hardly the type

### H.    <u>4617(b)(19)(B)'s Text Trumps Irrelevant Common Law Trust Principles</u>

SFR asserted that mortgages held in trust are not "assets of the regulated entity."[9] Also, SFR contended that even "if mortgages 'held in trust' were truly a *specific* type of 'asset of the regulated entity,' then 4617(b)(19)(B) [a specific law] 'controls over' 4617(b)(2)(A)(i) [a general law]." OB_30. Plaintiffs ignore this argument, abandoning 4617(b)(19)(B)'s text for common law trust principles. Plaintiffs abandon the text because "owner" appears once in 4617(b)(19)(B), but not in reference to the Enterprises. The "owners" that 4617(b)(19)(B)(ii) mentions are "the beneficial owners of such mortgage," who consist "of any person other than the" Enterprises. Mortgages held in trust have "beneficial owners," who are "any person other than the" Enterprises—a point SFR made but Plaintiffs ignore, just as they ignore 4617(b)(19)(B)'s text. OB_19.

Regarding common law trust principles, Plaintiffs allege the Enterprises are trustees of common law trusts; as trustees, they supposedly own trust assets. AB_18. Plaintiffs quote *Paloian* for the proposition that in "'American law, a trustee is the

---

of authority Plaintiffs should use to analyze 4617(b)(19)(B) or 4617(b)(2)(A)(i). Rather, Plaintiffs should have used statutory text.

[9] OB_30_n.23. Plaintiffs claim SFR "does not dispute that the Enterprises owned their securitized loans *before* conservatorship." AB_18. "Securitized loans" is not in 4617. Neither Congress nor SFR used this phrase. To the extent that Plaintiffs are discussing mortgages held in trust, SFR *did* dispute that they are "assets of the regulated entity." OB_30_n.23.

legal owner of the trust's assets.'" AB_18 (quoting *Paloian v. LaSalle Bank, N.A.*, 619 F.3d 688, 691 (7th Cir. 2010)). Regrettably, Plaintiffs neglect to mention that *Paloian* supported this proposition by citing *Wellpoint, Inc. v. Comm'r*, 599 F.3d 641, 648 (7th Cir. 2010). Plaintiffs ignore *Wellpoint* because it concluded that "***the beneficiaries are the real owners***" of trust assets. *Id. Wellpoint* defeats Plaintiffs' argument that if an Enterprise is a trustee, then it owns trust assets.

Plaintiffs insist Enterprise trusts are common law trusts, incapable of owning property. AB_18-19. This position is waived because it lacks supporting authority; in their "Argument" section, Plaintiffs state—without authority—that Enterprise trusts are common law trusts. AB_18-19; *Graf*, 610 F.3d at 1166.[10]

Regardless, Plaintiffs' description of Enterprise trusts does not resemble common law trusts. Common law trusts are "'[u]sed to effect a gift or transfer of property.'" *In re Gurney's Inn Corp. Liquidated Trust*, 215 B.R. 659, 661 n.2 (Bankr. E.D. N.Y. 1997). They are "primarily an estate-planning tool." *France v. Thermo Funding Co., LLC*, 989 F. Supp. 2d 287, 299 (S.D. N.Y. 2013). Contrastingly, when mortgages are pooled into a trust, common law trust principles

---

[10] Plaintiffs' "Statement of the Case" contends "the Enterprises customarily deposit mortgage loans into common-law trusts[.]" AB_6. Plaintiffs support this contention by citing two declarations. Supp._ER_58, 158. Yet, these declarations' statements, about Enterprise trusts' supposed "common law" status, are impermissible legal conclusions. *Wicker v. Oregon*, 543 F.3d 1168, 1177 (9th Cir. 2008). Perhaps this is why Plaintiffs' "Argument" section does not cite these declarations.

are inapplicable. *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 183, 191 (S.D. N.Y. 2011). The Restatement (Third) of Trusts emphasizes that "the law relating to the use of trusts as devices for conducting business and investment activities outside the express private- and charitable-trust context is not within the scope of this Restatement. . . . [M]ost pooled investment vehicles are properly governed by laws applicable to investment companies and to the issuance and sale of securities." Restatement (Third) of Trusts § 1 cmt. b (2003). When trusts are "pooled investment vehicles"—which is effectively how Plaintiffs describe Enterprise trusts—they are "a legal personality, conduct[] business in [their] own right, can sue or be sued, and generally operate[] like an unincorporated business entity . . . ." *France*, 989 F. Supp. 2d at 299. As a result, Plaintiffs' position that Enterprise trusts are common law trusts, incapable of owning property, fails. It is also a position that contradicts publically available statements from the Enterprises. SFR's Motion to Dismiss, ECF_46, 25:14-18, noted that Freddie sends a "Borrower Notification" to homeowners, which provides:

> **Q: Who actually owns my mortgage, Freddie Mac or the trust?**
> A: ***The trust indicated on your notification letter owns your mortgage***. Freddie Mac is the trustee of that trust.

http://www.freddiemac.com/singlefamily/pdf/borrower_notification_faqs.pdf (page 2) (last visited Jan. 30, 2017) (emphasis added). And, in 2010—on the heels of

15

adopting new accounting standards—Fannie filed a document with the SEC that included this "Frequently Asked Question":

> 2) Does the adoption of the new accounting standards change your overall risk position and **do you now own the assets held in consolidated trusts?**
>
> ___No. The assets that underlie each MBS trust continue to be legally isolated from Fannie Mae___ for the benefit of MBS certificateholders.

https://www.sec.gov/Archives/edgar/data/310522/000095012310046823/w78333e xv99w1.htm (page 4) (last visited Jan. 30, 2017) (emphasis added).[11] Either way, 4617(b)(19)(B)'s text trumps irrelevant common law trust principles.

## II. PLAINTIFFS' DUE PROCESS POSITIONS FAIL BECAUSE THEY CONTRAVENE SUPREME COURT PRECEDENT & DISTORT SFR'S ARGUMENTS

### A. 4617(j)(3)'s Text is not "Automatic" & FHFA Makes Decisions Concerning Consent

Plaintiffs insist that 4617(j)(3) is "automatic," a self-executing provision that protects FHFA's alleged property. AB_36, 43. This tries to create the impression that FHFA does not make decisions concerning consent. AB_34. Yet, 4617(j)(3)'s

---

[11] The links to the Enterprise documents are part of SFR's response to Plaintiffs' argument that Enterprise trusts cannot own mortgages. Therefore, this Court can consider the links and their corresponding documents. *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992) ("'[w]e have discretion to review an issue not raised by appellant . . . when it is raised in the appellee's brief.'"). Additionally, SFR's Brief explained why—as a matter of statutory text—it is irrelevant whether mortgages held in trust are "assets of the" Enterprises. OB_28-30.

text establishes that it is not self-executing and that FHFA makes decisions concerning consent.[12]

Self-executing laws function on their own, without the involvement of a government actor. *Tulsa Prof'l Collection Services, Inc. v. Pope*, 485 U.S. 478, 486 (1988); *Texaco, Inc. v. Short*, 454 U.S. 516, 530, 533-37 (1982). A statute is not self-executing when it authorizes a government actor—other than Congress—to make individualized decisions that can nullify property interests. *Texaco*, 454 U.S. at 537. Here, 4617(j)(3)'s reference to "the Agency" means a government actor—other than Congress—is involved. Also, 4617(j)(3) authorizes FHFA to make a decision concerning consent by linking the words "consent" and "Agency" in the phrase "consent of the Agency." Linking "consent" with "Agency" denotes that 4617(j)(3) authorizes FHFA to make a decision. The phrase "of the Agency" shows that this decision belongs to FHFA; it is a decision "*of the* Agency." This decision is individualized because 4617(j)(3) focuses on "*the* consent" of FHFA. Congress's use of the definite article "*the*" demonstrates that FHFA's decision is individualized. *In re Cardelucci*, 285 F.3d 1231, 1234 (9th Cir. 2002) (definite article "the" connotes

---

[12] Plaintiffs erroneously state the record does not show that FHFA makes decisions concerning consent. But this treats a question of law as one of fact; whether FHFA makes such decisions is a question of law because it turns on 4617(j)(3)'s meaning. *Clark v. Astrue*, 529 F.3d 1211, 1214 (9th Cir. 2008) (statute's meaning is question of law). Hence, Plaintiffs' insights about the record are inapposite. Besides, the record shows FHFA made decisions concerning consent. ER_33:13-14.

individualization).[13] Finally, if FHFA decides not to consent, then that decision nullifies state-recognized interests.[14]

Plaintiffs' position, that FHFA does not make decisions concerning consent, is belied by the FAC. The FAC indicates FHFA learned about the sales of the five houses to SFR; it describes these sales by date, location, and price, proving FHFA knew about them. ER_38-43. And, the FAC avers FHFA "has not consented to the extinguishment of either Enterprise's interest in any property that has been the subject of an HOA Foreclosure Sale." ER_33:13-14. This averment encompasses the five houses sold to SFR, demonstrating FHFA decided not to consent.

## B. Supreme Court Precedent Defeats Plaintiffs' Contention that SFR did not Acquire Property Interests

Plaintiffs accuse SFR of arguing that "the Court must look only to state law to determine the scope" of a property interest. AB_40. SFR did not make this argument; it explained—pursuant to Supreme Court precedent—what happens *when* state law recognizes an interest. OB_32-34. Under *Paul v. Davis*, 424 U.S. 693, 710

---

[13] *Skylights'* description of 4617(j)(3)'s plain meaning acknowledges FHFA makes decisions concerning consent. *Skylights LLC v. Byron*, 112 F. Supp. 3d 1145, 1152 (D. Nev. 2015). Plaintiffs disagree by citing *Skylights'* fourth footnote. AB_40. That footnote did not discuss 4617(j)(3)'s plain meaning or FHFA's decisions concerning consent; it rejected a due process argument that is different from SFR's positions.

[14] Unlike 4617(j)(3), 4617(j)(2) and 4617(j)(4) are self-executing because they function on their own, without a government actor's involvement. Plaintiffs treat 4617(j)(3) no differently, as if it read, "No property of the Agency shall be subject to . . . foreclosure ~~. . . without the consent of the Agency~~."

(1976), if state law recognizes an interest, then it is constitutionally protected "property," triggering due process. *Paul* determined that interests attain "constitutional status ***by virtue of the fact that they have been initially recognized and protected by state law*** . . . ." *Id.* (emphasis added). The Supreme Court applies this principle to cases where state and federal law interact, as they do here. OB_33 (collecting cases). Here, Plaintiffs admit Nevada law recognizes and protects SFR's interests in the five houses. ER_33:4-7, 47:23-24; AB_1, 3, 10. Under *Paul*, this admission means SFR has interests that trigger due process. The district court's contrary conclusion is reversible error, an error Plaintiffs' three cases cannot cure.

Plaintiffs' cases—none of which was authored by this Court or the Supreme Court—are distinguishable because they do not involve this appeal's due process context. AB_40-41. The context consists of cases that have three characteristics: (i) state-recognized interests, (ii) a federal law authorizes a government actor to make decisions that can nullify those interests, and (iii) a government actor's decision nullifies those interests without due process. OB_31. In fact, only one of Plaintiffs' cases implicates due process; the rest are takings cases. Plaintiffs claim these decisions demonstrate that federal law is just as important as state law in determining whether an interest exists. AB_40.

*Hardison* dealt with whether *federal* law recognized a medical resident's interest in being employed by the Department of Veterans Affairs. *Hardison v.*

19

*Cohen*, 375 F.3d 1262, 1268 (11th Cir. 2004). The resident claimed this interest existed because it emanated from and was recognized by a *federal* law, U.S.C. Title 38. So, *federal* law impacted whether an interest existed because the resident claimed this interest emanated from and was recognized by *federal* law. Contrastingly, SFR's interests emanate from and are recognized by *state* law. Such recognition triggers due process, even when state and federal law interact. The "fact that the property interest is recognized under state law is enough to trigger" due process. *Ralls Corp. v. CFIUS*, 758 F.3d 296, 316 (D.C. Cir. 2014).

Plaintiffs' remaining cases involve takings, shedding no light on due process' applicability. Also, they do not elaborate on Plaintiffs' position that federal law is just as important as state law in determining whether an interest exists. They briefly mention that federal law—along with state and common law—can define interests. For example, *Schooner* reversed the district court because it incorrectly described the type of interest that a litigant had. *Schooner Harbor Ventures, Inc. v. United States*, 569 F.3d 1359, 1363 (Fed. Cir. 2009). Though *Schooner* acknowledged that interests can derive from federal law, it did not expound on this statement. *Id.* at 1362. *Schooner* did not even specify whether state *or* federal law recognized the interest; the focus was on the *description* of that interest, not its *existence*. As such, *Schooner* is distinguishable. So is *Air Pegasus*, another takings case. *Air Pegasus* did not assess whether state or federal law recognized an interest. Rather, it

20

determined a litigant's takings claim was too attenuated because the litigant did not assert that *its* interests were taken. *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1215 (Fed. Cir. 2005). The litigant's injuries were caused by "the government's purported taking of other people's property. This circumstance does not form . . . a viable takings claim." *Id.* Here, SFR's *due process* arguments are that FHFA deprived SFR of *SFR*'s interests, not someone else's interests. *Air Pegasus* is distinguishable.

### C.    Plaintiffs Distort *Ralls*

Plaintiffs mischaracterize *Ralls*, a D.C. Circuit decision involving this case's due process context. OB_34-37. They inaccurately claim that *Ralls* determined that the Defense Production Act of 1950 ("DPA") "operated as a potential qualification on" Ralls's state-recognized interests. AB_41. Yet, this is what the *district court* in *Ralls* concluded, a conclusion that was *reversed*. *Ralls*, 758 F.3d at 316. The district court determined Ralls did not obtain constitutionally protected interests because they were subject to a contingency—what Plaintiffs call a "potential qualification"—from federal law. The contingency was that pursuant to the DPA, if the President decided the sale to Ralls threatened national security, then that decision would nullify Ralls's interests. *Id.* The D.C. Circuit reversed because a contingency from *federal* law could not prevent Ralls from obtaining interests recognized by *state* law. *Id.* The "fact that the property interest is recognized under state law is enough to

21

trigger the protections of the Due Process Clause." *Id. Ralls* explained there "is nothing 'contingent' about the interests Ralls obtained under state law . . . ." *Id.* The district court erred because "[t]here is no contingency built into the *state* law from which Ralls's property interests derive and to which interests due process traditionally apply." *Id.* at 316-17. So too here.

## D.    Plaintiffs Mischaracterize SFR's Due Process Cases

In addition to *Ralls*, Plaintiffs distort other decisions from this case's due process context. Plaintiffs claim these decisions do not involve a statute that "[p]revents from the outset the" acquisition of property that triggers due process. AB_43. Incorrect. *James Daniel Good* construed 21 U.S.C.A. § 881(a)(7), "no property right shall exist in" real property used to commit drug crimes. *Pillsbury* interpreted 15 U.S.C. § 18, "No person . . . shall acquire . . . assets" if doing so may lessen competition or create a monopoly. *Brock* evaluated 49 U.S.C. § 31105(a)(1)(A)(i) (formerly 49 U.S.C. § 2305), "A person may not discharge an employee" for filing a complaint regarding a violation of a commercial vehicle safety regulation.[15] These statutes prohibit acquiring interests "from the outset," which is how Plaintiffs depict 4617(j)(3). Yet, *James Daniel Good*, *Pillsbury*, and *Brock* determined that, for purposes of due process, interests were nonetheless

---

[15] *Brock* involved the state-recognized interest in being able to fire employees. *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 260 (1987).

acquired because ***state law recognized*** them. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53-54 (1993); *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 260, 268 (1987); *Pillsbury Co. v. FTC*, 354 F.2d 952, 953-54, 963 (5th Cir. 1966). The same holds here; assuming *arguendo* that 4617(j)(3) prohibits SFR from acquiring interests "from the outset"—which it does not do—*state* law's recognition of SFR's interests means SFR has interests that trigger due process.

### E.     The Legislative Acts Doctrine is Inapplicable

SFR explained the Legislative Acts Doctrine is inapplicable "because SFR did not argue that 4617(j)(3)'s enactment deprived it of property." OB_40. Plaintiffs respond by asserting that 4617(j)(3) is not "in contravention of substantive due process." AB_44. This is nonsensical; SFR did not make a substantive due process argument. As such, Plaintiffs' positions about the Legislative Acts Doctrine fail.

### F.     Plaintiffs' Concessions Support SFR's Due Process Arguments

Plaintiffs make concessions that support SFR's due process arguments. They opine, "nothing in [4617(j)(3)] requires" FHFA to provide notice that it owns a mortgage. AB_47. Plaintiffs boast, "nothing in [4617(j)(3)] requires that . . . FHFA . . . facilitate SFR in seeking FHFA's consent[.]" AB_48. These concessions confirm "nothing in" 4617(j)(3) provides SFR with *notice* or *an opportunity to be heard*.[16]

---

[16] Despite these concessions, Plaintiffs state SFR is presumed to know the law. AB_45. But SFR cannot know of a non-existent mechanism to request consent.

### III. PLAINTIFFS DISREGARD TRADITIONAL PREEMPTION PRINCIPLES

Plaintiffs' preemption positions treat 4617(j)(3) as "automatic." SFR explained why this is wrong, and incorporates those arguments herein.

### A. 4617(j)(3)'s Text Defeats Plaintiffs' Express Preemption Arguments

Plaintiffs believe explicit preemptive language "need not appear in" 4617(j)(3)'s text for it to be an express preemption provision. AB_32. SFR cited three Supreme Court cases—which Plaintiffs ignore—that refute this atextual version of express preemption. OB_47. Rather than confront SFR's cases, Plaintiffs cite two decisions that have nothing to do with preemption; one discusses sovereign immunity, and the other involves jurisdictional procedural rules. AB_33 (citing *United States v. Kwai Fun Wong*, 575 U.S. ____, 135 S. Ct. 1625 (2015); *FAA v. Cooper*, 566 U.S. 284 (2012)). That Plaintiffs do not use a *preemption* decision is reason enough to reject their contentions.[17]

Realizing that 4617(j)(3)'s text is not *expressly* preemptive, Plaintiffs turn to FDIC precedent construing 12 U.S.C. § 1825(b)(2), what Plaintiffs call the "analogous statute" to 4617(j)(3). AB_30. Plaintiffs contend a Fifth and a Tenth

---

[17] *City of Spokane v. Fed. Nat'l Mortg. Ass'n*, 775 F.3d 1113 (9th Cir. 2014) does not salvage Plaintiffs' express preemption arguments. *Spokane* assessed 4617(j)(2), a self-executing law. Contrastingly, 4617(j)(3) is not self-executing. Further, *Spokane* concerned the tax preemption context, which this appeal does not involve. *Spokane*'s three references to "preemption" were connected with the tax preemption context, causing them to be inapposite. *Spokane*, 775 F.3d at 1117.

Circuit decision both determined that 1825(b)(2) preempted state tax lien foreclosure laws. AB_30-31. Plaintiffs neglect to mention that FDIC—unlike FHFA—created a procedure to obtain 1825(b)(2) consent.[18] Statement of Policy on Foreclosure Consent and Redemption Rights, 57 Fed. Reg. 29491-94 (July 2, 1992). This procedure was in existence before the Fifth and Tenth Circuits issued their decisions. No such procedure exists for 4617(j)(3). Plaintiffs' reliance on a Fifth Circuit decision is puzzling. In *McFarland*, the Fifth Circuit concluded that 1825(b)(2) is inapplicable to private parties, an interpretation that would prevent 4617(j)(3) from applying to SFR. *FDIC v. McFarland*, 243 F.3d 876, 886 (5th Cir. 2001). Plaintiffs' request that this Court "turn to precedent interpreting" 1825(b)(2)—including Fifth Circuit precedent—inadvertently requests this Court to follow *McFarland*.[19]

**B.     4617(j)(3)'s Purpose Refutes Plaintiffs' Implied Preemption Positions**

4617(j)(3)'s purpose is to authorize FHFA to make decisions concerning consent.[20] OB_48. Plaintiffs claim this cannot be 4617(j)(3)'s purpose because it

---

[18] SFR discusses FDIC's procedure in response to Plaintiffs' contention that this Court should follow FDIC precedent. *Ullah*, 976 F.2d at 514.

[19] According to Plaintiffs, *Beal Bank* concluded that in 1825(b)(2) "Congress did not intend the FDIC to make individual decisions" concerning consent. AB_36. *Beal Bank*, however, did not address whether FDIC makes individual decisions; "decision" or "decide" do not appear in *Beal Bank*. *Beal Bank, SSB v. Nassau Cnty.*, 973 F. Supp. 130, 133-34 (E.D. N.Y. 1997). Instead, it rejected an argument that FDIC had impliedly consented. *Id.* at 133.

[20] SFR explained that *if* FHFA satisfies due process—which it did not do here—then its decision not to consent protects it from a so-called "array of conflicting state

"would undercut the efficient management of conservatorships of large, complex entities." AB_35. This argument fails because it lacks supporting authority. *Graf*, 610 F.3d at 1166. Also, it is refuted by FDIC's experience with 1825(b)(2). When FDIC created a procedure to request consent, it emphasized that it did so to "promote efficiency in [FDIC's] operations." 57 Fed. Reg. 29491. These "operations" include decisions concerning consent, debunking Plaintiffs' remarks about "efficiency." FDIC's procedure demonstrates that 1825(b)(2)'s purpose is to authorize FDIC to make decisions concerning consent, just as 4617(j)(3) does with FHFA.

Plaintiffs prefer *Skylights*' description of 4617(j)(3)'s purpose: protect "the property sought to be conserved by FHFA." *Skylights LLC v. Byron*, 112 F. Supp. 3d 1145, 1152-53, 1155-59 (D. Nev. 2015). They posit that *Skylights*' "consent requirement" does not pursue this "purpose[] at all costs." AB_36-37; *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987). *Skylights*' "consent requirement" is that an entity must obtain FHFA's consent in order to extinguish FHFA's alleged property; if consent is not obtained, then preemption supposedly occurs. *Skylights*, 112 F. Supp. 3d at 1153. Yet, Plaintiffs admit 4617(j)(3) lacks a way to obtain consent. AB_48. Plaintiffs also admit 4617(j)(3) does not require FHFA to provide notice that it allegedly owns a mortgage, preventing SFR from knowing that

---

laws," AB_32, and effectuates what *Skylights* identified as 4617(j)(3)'s purpose: protecting FHFA's alleged property. OB_49-51 (citing *Skylights*, 112 F. Supp. 3d at 1152-53, 1155-59).

26

4617(j)(3) applies. AB_47. Such admissions illustrate that *Skylights'* "consent requirement" pursues 4617(j)(3)'s purported "purpose[] at all costs." *Rodriguez*, 480 U.S. at 525-26. This is so because it compels SFR to obtain FHFA's consent—even though there is no way for SFR to do so, or reason to know that it purportedly must. Congress did not so intend.

## IV.   FHFA VIOLATED "REASONED DECISIONMAKING"[21]

Plaintiffs believe FHFA satisfied "Reasoned Decisionmaking" because 4617(j)(3) is allegedly "automatic." SFR demonstrated why 4617(j)(3) is not "automatic," and incorporates those arguments herein. Inexplicably, Plaintiffs do not oppose SFR's analysis of *Michigan v. EPA*, 576 U.S. ___, 135 S. Ct. 2699 (2015). OB_51-53. Their refusal to do so is a concession. *United States v. Castillo-Marin*, 684 F.3d 914, 922 (9th Cir. 2012).

Additionally, Plaintiffs opine that *Sonoma* demonstrates that FHFA's decisions concerning consent are "appropriate" for purposes of 4617(b)(2)(D)(ii), and hence satisfy "Reasoned Decisionmaking." AB_49. Under 4617(b)(2)(D)(ii), FHFA's decisions to "preserve and conserve" alleged Enterprise assets—such as

---

[21] Plaintiffs contend FHFA's April 21, 2015, Press Release "is within the scope of" FHFA's powers because it was "entirely prospective." AB_36. Here, SFR acquired the five houses *before* FHFA issued its Release. Yet, Plaintiffs *retroactively* use FHFA's Release against SFR's acquisition of those houses. In doing so, Plaintiffs unwittingly show that the Release is not "entirely prospective." Under Plaintiffs' logic, this prevents the Release from being "within the scope of" FHFA's powers.

deciding not to consent—must be "appropriate." *Sonoma*, however, exhorted that FHFA cannot act "'[b]eyond or contrary to, its statutorily prescribed'" powers. *Cnty. of Sonoma v. FHFA*, 710 F.3d 987, 992 (9th Cir. 2013). Here, FHFA's decision concerning consent is not "appropriate" because 4617(j)(3) lacks a way to obtain consent. Consequently, the process—or lack thereof—FHFA used in deciding whether to consent is not "logical [or] rational," defying "Reasoned Decisionmaking." *Michigan*, 135 S. Ct. at 2706.

## V. THE DISTRICT COURT'S ORDER CONTRAVENED FRCP 65(d)

Summary judgment was granted on all of Plaintiffs' claims, including one for "Permanent Injunction." ER_22:1-2. Yet, the district court omitted details mandated by FRCP 65(d), constituting reversible error. Plaintiffs' observation that the district court did "not mention any injunction," AB_49, is exactly the point—such silence "makes it impossible for an appellate tribunal to know precisely what it is reviewing." *Schmidt v. Lessard*, 414 U.S. 473, 477 (1974). Plaintiffs also claim no injunction was granted because "Plaintiffs do not read [the order]" that way. AB_50. This is meritless; how Plaintiffs "read" the order does not dictate its legal import.

## VI. PLAINTIFFS ADMIT *BOURNE VALLEY* IS NOT CONTROLLING

Plaintiffs admit *Bourne Valley Ct. Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016) does not control this appeal because they "did not raise that issue [i.e. facial unconstitutionality] and thus it is not a proper subject of" appeal.

28

AB_50. So, Plaintiffs waive any facial unconstitutionality argument. *Gribben*, 528 F.3d at 1171. Unlike in *Bourne Valley*, SFR does not "waive [Plaintiffs'] waiver." *Bourne Valley*, 832 F.3d at 1158 n.3.[22]

**CONCLUSION**

The district court's order should be reversed, and this Court should remand with instructions to dismiss the FAC.

RESPECTFULLY SUBMITTED this __6th__ day of February, 2017.

**KIM GILBERT EBRON**

*/s/Jesse N. Panoff_____*
HOWARD C. KIM, ESQ. (SBN 10386)
JACQUELINE A. GILBERT, ESQ. (SBN 10593)
DIANA CLINE EBRON, ESQ. (SBN 10580)
JESSE N. PANOFF, ESQ. (SBN 10951)
KIM GILBERT EBRON
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
(702) 485-3300
jesse@kgelegal.com
*Attorneys for SFR Investments Pool 1, LLC*

---

[22] Plaintiffs note SFR did not discuss *Bourne Valley* in the district court. AB_49. SFR did not do so because *Bourne Valley* was issued *three months after* the district court's order. SFR could not have discussed a case that had yet to be written.

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,957 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii)

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman 14-point font.

RESPECTFULLY SUBMITTED this __6th__ day of February, 2017.

KIM GILBERT EBRON

*/s/Jesse N. Panoff*_____
HOWARD C. KIM, ESQ. (SBN 10386)
JACQUELINE A. GILBERT, ESQ. (SBN 10593)
DIANA CLINE EBRON, ESQ. (SBN 10580)
JESSE N. PANOFF, ESQ. (SBN 10951)
KIM GILBERT EBRON
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139
(702) 485-3300
jesse@kgelegal.com
*Attorneys for SFR Investments Pool 1, LLC*

30

### CERTIFICATE OF SERVICE

9th Circuit Case Number(s) | 16-15962

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### CERTIFICATE OF SERVICE
When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  Feb 6, 2017 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | /s/ Jesse N. Panoff

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### CERTIFICATE OF SERVICE
When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format) |

31